# United States Court of Appeals
## For the First Circuit

No. 15-2372

DOUGLAS JIMMY BBALE,

Petitioner,

v.

LORETTA E.LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya and Stahl,
Circuit Judges.

George Charles Maroun, Jr. and Maroun & Cabelus LLC on brief for petitioner.

Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, John S. Hogan, Assistant Director, Office of Immigration Litigation, and Ashley Martin, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

October 24, 2016

**SELYA**, **Circuit Judge**.  The petitioner, Douglas Jimmy Bbale, seeks judicial review of a final decision of the Board of Immigration Appeals (BIA), which denied his motion to reopen removal proceedings.  Discerning no abuse of the BIA's broad discretion, we deny the petition.

## I.  BACKGROUND

The petitioner, a Ugandan national, was admitted to the United States as a visitor for a six-month period that expired on November 22, 2000.  He overstayed, and almost nine years elapsed before the Department of Homeland Security (DHS) instituted removal proceedings against him.

The petitioner initially pursued an application to adjust his status to that of a lawful permanent resident based on a petition filed by his citizen-spouse.  That strategy backfired when, on December 5, 2011, United States Citizenship and Immigration Services issued a notice of intent to revoke the petition, citing inconsistencies in the testimony of the petitioner and his wife.

After withdrawing his adjustment application, the petitioner applied for asylum and withholding of removal.[1]  His claim for asylum was predicated on an asserted fear of persecution

_____

[1] The petitioner also asked for relief under the United Nations Convention Against Torture.  Because this initiative was not pursued before the BIA, we make no further reference to it.

in Uganda premised on genuine and imputed political opinion. Specifically, he alleged that in April of 1998, his father was imprisoned — and ultimately never seen again — because he was an active member of the Democratic Party of Uganda, a political party that opposed the Ugandan President, Yoweri Museveni. He added that between 1998 and 1999, he himself was detained by Ugandan police on four occasions. Withal, he was not physically harmed and the longest period he was detained was one day. The petitioner also suggested that his more recent political activities would subject him to persecution in Uganda: while living in the United States, the petitioner has organized and participated in anti-Museveni demonstrations.

The petitioner also averred that in 2009 his brother was arrested in Uganda on a murder charge. The petitioner branded this arrest as bogus, contending that the Museveni government had fabricated allegations that his brother was practicing voodoo and witchcraft on small children, including child sacrifice. Although the brother was initially acquitted, he was subsequently convicted and remains in prison. According to the petitioner, both the arrest and prosecution were politically motivated, and his brother is innocent.

The petitioner conceded removability in 2012 and later testified at a merits hearing in the immigration court on January 27, 2014. At the conclusion of the hearing, the immigration judge

(IJ) denied the petitioner's applications for asylum and withholding of removal in a bench decision. The IJ denied the asylum application as untimely, noting that the petitioner had not alleged changed or extraordinary circumstances that could justify the 13-year delay in seeking asylum. The IJ also concluded that the petitioner had failed to establish his eligibility for withholding of removal.

The petitioner appealed to the BIA. He argued that he did not apply earlier for asylum because he was not then aware of either the filing deadline or the severity of his brother's circumstances. With respect to withholding of removal, he argued that the IJ had failed to consider the connection between the accusations of witchcraft against his brother and the petitioner's membership in a family now associated with witchcraft. On June 10, 2015, the BIA rejected these arguments and dismissed the petitioner's appeal.

The petitioner did not seek judicial review of the BIA's decision but, on August 10, 2015, moved to reopen removal proceedings. The petitioner submitted that a key witness — his niece — had been unable to testify at his merits hearing because she was mentally incapacitated due to the psychological trauma that she suffered as a result of her father's (the petitioner's brother's) immurement. He added that his niece had received asylum

- 4 -

based on circumstances substantially similar to those that pertained in his case.

The BIA denied the motion to reopen. It concluded that the petitioner had failed to satisfy the requirements for reopening, as he did not demonstrate that the motion was supported by new, previously unavailable, material evidence. The BIA went on to explain that the fact that the petitioner's niece was granted asylum in 2012 was not a new fact supported by previously unavailable evidence that could not have been presented at the removal hearing; and it determined that a medical report submitted by the petitioner did not demonstrate that his niece was incapable of providing testimony at the merits hearing.

This timely petition for judicial review followed. The only issue open to us is whether the BIA abused its discretion in denying the petitioner's motion to reopen.

## II.  ANALYSIS

We preface our analysis with a summary of the applicable legal standards. Motions to reopen removal proceedings are contrary to "the compelling public interests in finality and the expeditious processing of proceedings" and are thus disfavored. Roberts v. Gonzales, 422 F.3d 33, 35 (1st Cir. 2005) (quoting Falae v. Gonzáles, 411 F.3d 11, 14-15 (1st Cir. 2005)). Consistent with this principle, the BIA enjoys wide latitude in deciding whether to grant or deny such a motion. See INS v. Doherty, 502 U.S. 314,

323 (1992). Judicial review of such a decision is solely for abuse of discretion. See Roberts, 422 F.3d at 35; Falae, 411 F.3d at 14. Consequently, the BIA's decision will stand unless the petitioner can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational manner. See Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

An alien seeking to reopen removal proceedings based on newly discovered evidence must both "introduce new, material evidence that was not available at the original merits hearing" and "make out a 'prima facie case of eligibility for the relief sought.'" Perez v. Holder, 740 F.3d 57, 62 (1st Cir. 2014) (quoting Jutus v. Holder, 723 F.3d 105, 110 (1st Cir. 2013)). The alien's motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1).

With this framework in place, we turn to the case at hand. To begin, the petitioner claims that the BIA abused its discretion in finding that his niece's anticipated testimony was not new, previously unavailable material evidence. The record belies this claim: it shows that the anticipated testimony of the petitioner's niece (who was granted asylum in 2012) was neither new, previously unavailable, nor material. We explain briefly.

- 6 -

As an initial matter, we note that the petitioner's motion was procedurally flawed; it did not sufficiently articulate what testimony his niece would provide if the proceedings were reopened. This flaw is fatal because we — like the BIA — are unable adequately to assess the materiality of the proffered testimony. Though the petitioner stated conclusorily that his niece had been granted asylum based on the same circumstances as those asserted in his application, his motion failed to describe the nature and extent of her expected testimony.

Nor was this the only shortcoming in the petitioner's motion to reopen. For the most part, the petitioner failed to support his motion with the requisite "affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1).[2] A party's factual assertions in pleadings are not evidence and are not sufficient to establish material facts. See Jupiter v. Ashcroft, 396 F.3d 487, 491 (1st Cir. 2005).

The petitioner attempts to excuse himself from this requirement by arguing that information pertaining to his niece's asylum application is confidential and, thus, within the ambit of

_____

[2] To be sure, the petitioner did include a piece of evidence — the medical report — with his motion papers. But this report, in and of itself, was insufficient to cure the petitioner's failure.

8 C.F.R. § 208.6.[3]  But this is whistling past the graveyard: nothing in the cited regulation prevented the petitioner's niece from recounting the substance of her anticipated testimony in an affidavit or declaration.  The regulation bars the government from disclosing certain confidential information; it does not bar either the asylum-seeker or prospective witnesses from testifying about facts within their personal knowledge.

Apart from these procedural shortcomings, the petitioner's proffer — as the BIA recognized — failed on the merits: even if the petitioner had adequately stated the facts that would be presented and duly supported that account with affidavits or other evidentiary materials, the information that he relied on was not new.  The petitioner's argument is that the fact that his niece was granted asylum under substantially the same circumstances is new, previously unavailable, material evidence.  But the record shows with conspicuous clarity that the petitioner's niece received asylum in 2012 — more than a year before the petitioner's January 2014 removal hearing.  The record also reveals

---

[3] Section 208.6(a) states in pertinent part that, with certain exceptions not relevant here, "[i]nformation contained in or pertaining to any asylum application . . . shall not be disclosed without the written consent of the applicant . . . ."  Relatedly, section 208.6(b) states in pertinent part that "[t]he confidentiality of other records kept by the Service and the Executive Office for Immigration Review that indicate that a specific alien has applied for asylum . . . shall also be protected from disclosure."

beyond any shadow of a doubt that the petitioner was aware of his niece's asylum status prior to his merits hearing. After all, his niece wrote a letter in support of his application for asylum and withholding of removal in September of 2013 (in which she mentioned her own asylum experience).

The petitioner's cause is not advanced by his assertion that his niece would testify that she genuinely fears for his safety should he be repatriated. Since these statements were previously made in the niece's September 2013 letter, they can scarcely be regarded as "new."[4] See Morgan v. Holder, 634 F.3d 53, 61 (1st Cir. 2011) (explaining that evidence that is cumulative of other evidence in the record is not "new" evidence sufficient to warrant reopening).

To say more would be pointless. Given that the BIA supportably found that the petitioner failed to introduce new,

---

[4] Our conclusion that the niece's statements are not new disposes of the matter. For the sake of completeness, however, we note that Dr. Husson's medical report, relied on by the petitioner, nowhere states, either directly or by fair implication, that the petitioner's niece was unable to testify at the January 2014 removal hearing. Though the report notes that she "had difficulties" discussing her father's alleged crimes during a period that arguably included the date of the petitioner's removal hearing, it does not attest that she was unable to testify. Moreover, in September of 2013, the niece wrote a letter in furtherance of her uncle's application that described the events surrounding her father's arrest. This letter undercuts any intimation in Dr. Husson's report that the petitioner's niece was incapacitated during the time leading up to his January 2014 merits hearing.

previously unavailable, material evidence in connection with his motion to reopen, it was within the BIA's discretion to deny the motion without reference to whether the petitioner had made out a prima facie case for asylum.  See Perez, 740 F.3d at 62-63.

**III.  CONCLUSION**

For the reasons elucidated above, we deny the petition for judicial review.  But although we need go no further, we think it appropriate to note that this appears to be a case in which the exercise of prosecutorial discretion may be appropriate under the DHS's detention and removal priorities.  See Memorandum from Jeh Charles Johnson, Sec'y, U.S. Department of Homeland Sec., on Policies for the Apprehension, Detention and Removal of Undocumented Immigrants to Thomas S. Winkowski, Acting Dir., U.S. Immigration & Customs Enf't, et al. (Nov. 20, 2014).  We explain briefly.

DHS divides its civil immigration enforcement priorities into three categories of decreasing importance: (1) threats to national security, border security, and public safety; (2) misdemeanants and new immigration violators; and (3) aliens who have been issued final removal orders.  Id. at 3-4.  DHS acknowledges that it "must exercise prosecutorial discretion in the enforcement of the law" and should exercise this discretion "as early in the case or proceeding as possible in order to . . . pursu[e] enforcement and removal of higher priority cases."

_Id._ at 2.  We are not convinced that DHS's stated enforcement priorities are intended to cover someone in the petitioner's situation.

The petitioner has meaningful family connections in the United States and has presented credible testimony that he would face a significant threat to his safety if he were to be returned to Uganda, especially given his familial history of political persecution in that country and his recent political activities in the United States.  Although the one significant blemish on the petitioner's record as a law-abiding person — an incident in which he was operating a motor vehicle while under the influence of alcohol and left the scene of an accident — is serious and likely qualifies under the letter of DHS's second priority category (for "significant misdemeanors"), DHS's policy provides that removal orders should be set aside if "there are factors indicating the alien is not a threat to national security, border security, or public safety."  _Id._ at 5.  Such factors include the alien's length of time in the United States, the alien's family or community ties in the United States, and other "compelling humanitarian factors."  _Id._ at 6.  Here, it appears that the petitioner and his family have long been opposed to the ruling regime in Uganda, opposition which has not gone unnoticed and which the IJ plausibly concluded would cause the petitioner to be exposed to imprisonment or more grievous harm if he was repatriated.

We summarize succinctly. Even though we find that the petitioner's argument for reopening of removal proceedings fails under the precedent established in this circuit, the administration's enforcement priorities strongly indicate that the petitioner should be a candidate for prosecutorial discretion. After all, a removal decision should not be made or effectuated "under a misapprehension of the governing departmental policy." Ortiz v. Lynch, 640 Fed. App'x 42, 45 (2d Cir. 2016).

**The petition for judicial review is denied.**