# United States Court of Appeals

## For the First Circuit

No. 18-2172

JOSE ANTONIO LOJA-PAGUAY,

Petitioner,

v.

WILLIAM P. BARR,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Daniel T. Welch, Kevin MacMurray, and MacMurray & Associates on brief for petitioner.

Brendan P. Hogan, Attorney, U.S. Department of Justice, Office of Immigration Litigation, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Cindy S. Ferrier, Assistant Director, on brief for respondent.

September 16, 2019

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General William P. Barr has been substituted for former Acting Attorney General Matthew G. Whitaker as the respondent.

**LYNCH**, **Circuit Judge**.  Jose Antonio Loja-Paguay, a native and citizen of Ecuador, seeks review of a Board of Immigration Appeals (BIA) decision affirming an Immigration Judge's (IJ) denial of his claims for asylum under the Immigration and Nationality Act (INA) § 208, 8 U.S.C. § 1158, withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under Article 3 of the United Nations Convention Against Torture (CAT).[1]

The IJ found that Loja was not a credible witness based on several discrepancies in his testimony that were not adequately explained, and the combination of that finding and the remaining evidence demonstrated that Loja had not met his burden for any relief.  As to CAT relief, independent of Loja's testimony, the IJ found there was nothing to show Loja would be tortured upon his return to Ecuador.  The IJ ordered him removed.  The BIA affirmed.

Loja argues to us that the BIA erred in determining he had not meaningfully challenged the adverse credibility finding, in affirming that finding, and in failing to consider all the evidence.  Because there was substantial evidence supporting the

---

[1]     The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231).

BIA's affirmance of the IJ's decision, we deny the petition for review.

                                    I.

Loja entered the United States on January 11, 2013, near Hidalgo, Texas, and was apprehended by immigration officials. Loja stated that he entered the United States because "he was traveling to New Jersey to reside and to seek employment for approximately two years." An asylum officer conducted a credible fear interview with Loja in Spanish.[2] Loja stated that he could not return to Ecuador because of a series of events that took place in November 2012.

According to Loja, on November 15, 2012, two police officers entered his food store and "said [he] had to sell drugs and guns for them." Loja refused. On November 20, 2012, the two officers returned with a third officer and told Loja that "if [he] did not sell the drugs and guns," the officers would kill him. The officers warned Loja not to tell anyone else what they wanted. When the asylum officer asked Loja why he did not report this incident to the police, Loja gave two reasons: that the police in Ecuador are corrupt and that his neighbors had told him the police killed his father. After the incident, Loja's neighbor told him that one of the police officers was the same person who killed his

_____

[2]     A paralegal from Loja's attorney's office listened in on the interview.

father. Loja closed his store but reopened it on November 25, 2012. That day, the officers returned and beat Loja until he was unconscious while saying, "we are going to kill you." Loja did not report this incident because he feared the police and now "knew that one of them killed [his] father." Loja left Ecuador on November 27, 2012.

On February 15, 2013, the Department of Homeland Security served Loja with a Notice to Appear in removal proceedings, charging that he was inadmissible under § 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I). On April 16, 2014, Loja conceded removability and stated his intent to seek asylum, withholding of removal, voluntary departure, and relief under the CAT.

That day, Loja filed an application for asylum. The affidavit attached to the asylum application described the same three events involving the police that he had recounted in the credible fear interview. Loja again said that he fled Ecuador out of fear that the police officers would return and kill him "like they killed [his] father."

At his merits hearing in 2017, Loja testified with the assistance of an interpreter. Loja told the IJ about the same three incidents involving police officers, and stated that he did not report the incidents due to police corruption in Ecuador. But he did not say that one of those officers had killed his father.

- 4 -

Loja said, "if I return and I run into them, they are going to kill me."

The IJ then asked Loja about what happened to his father. Loja told the IJ that "he died." Loja said he did not know how his father died, and that all he had been told by neighbors as a child was that "it was some police officers." The IJ then again asked Loja, "[t]oday, right now, do you know who killed your father" and Loja said "[n]o."

The IJ then questioned Loja about his statement to the asylum officer, but absent from his testimony, that a neighbor had informed him that one of the police officers threatening him was the officer who killed his father. Loja responded that "[i]t's also a long time and I don't even remember" and then said, "I don't remember specifically what the neighbors told me who killed my father, but they did tell me that they were police officers." When asked about the discrepancies between his accounts, Loja first stated, "[w]ell, I get confused." When the IJ asked again, Loja said, "[i]t's many years . . . that I said that, so a long time has passed to remember everything that I said." When the IJ sought clarification, Loja stated that he forgot.

The IJ issued an oral decision on November 17, 2017. As to Loja's forgetting that the officer who beat him unconscious was the officer who reportedly killed his father, the IJ said:

[T]he respondent during his testimony to the court never mentioned this and after the attorneys had questioned the respondent, the court carefully questioned him and again, he did not mention this. When the court asked him to explain and made clear to him what he had said to the asylum officer, the respondent answered that he had forgotten. This is farfetched. This is not plausible. Even taking into account the fact that the respondent was born on February 2, 1993 and interviewed by asylum officers on February 4, 2013, that is even taking into account his age and the circumstances of his arriving in the United States, even taking all of that in the best light for the respondent, it is simply not plausible that the respondent would forget that one of the individuals who he alleges brutally beat him after wanting him to sell weapons and drugs out of his store was one of the individuals, according to his neighbor, who murdered his father. That is simply not plausible, not believable, and beyond farfetched. The court finds that respondent was given every opportunity to explain this. His attorney has noted that he was aware of this discrepancy and the respondent has said that he forgot. This is not a minor fact. This is not something that the respondent in this court's view would reasonably forget. There's been no explanation whatsoever provided to the court as to why the respondent would forget that one of the individuals that beat him unconscious or one of the individuals that he believes beat him unconscious is the same individual, a police officer, who killed his father. This inconsistency, which is unexplained to this court, is fatal to the respondent's credibility. The court does not accept the respondent's explanation that he simply forgot this.

The IJ then found Loja's entire story not credible, that he had not shown that he owned a business or was ever assaulted, or that he had suffered any harm, much less harm rising to the level of

- 6 -

persecution. Nor had he shown any nexus to one of the five protected grounds. The IJ also found that Loja lacked a well-founded fear of future persecution.

Loja appealed the IJ's decision to the BIA, and his appeal was dismissed on November 2, 2018. The BIA rejected Loja's challenge to the IJ's determination, including the credibility finding, and said it found Loja's explanation that he "was confused" by the IJ's questioning to be "unconvincing," and in any event, was supported by the IJ's view of the evidence. In the absence of any credible testimony, Loja had not met his burden for establishing eligibility for asylum or withholding of removal. The denial of Loja's CAT claim was supported by the lack of credibility finding and the absence of any evidence he would be tortured by or with the acquiescence of any person acting in an official capacity.

## II.

We review "[f]actual findings, including credibility determinations . . . under the familiar substantial evidence standard." Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009). Under this deferential standard, "we must uphold the BIA's decision 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)). "In other words, findings of fact will stand as long as they are 'supported by

reasonable, substantial, and probative evidence on the record considered as a whole.'" Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Where, like here, "the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, this Court reviews both the BIA's and IJ's opinions." Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012).

To be eligible for asylum, an applicant must show "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant's testimony alone can meet this burden, but if the agency finds that the testimony is not truthful, "that determination strips the testimony of probative force and permits the agency to . . . discount it." Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007). The REAL ID Act permits the IJ to consider inconsistencies in an applicant's statements, "without regard to whether an inconsistency . . . goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

We bypass Loja's meritless assertions that the agency erroneously found waiver and failed to consider the whole record or to give a reasoned decision. We get to the attack on the

adverse credibility finding, as it is clear there is no corroborating evidence supporting his claims for relief.[3]

Loja makes three arguments attacking the credibility finding. He argues that there was no discrepancy in the record, that he did not forget but was "confused" by the IJ's questioning, and that even if there were inconsistencies, they "only involved a very small portion of the testimony."

Loja's challenges fail. Loja admits stating in the credible fear interview and his asylum affidavit that the same police officer who beat him also killed his father. Loja failed to state this fact in his testimony to the IJ, even when he was specifically asked about his father. Moreover, the IJ was not required to credit Loja's single assertion of confusion. See, e.g., Weng v. Holder, 593 F.3d 66, 72 (1st Cir. 2010) (noting that the IJ is not obligated to accept an explanation for an

---

[3]    Loja also argues that the BIA "[did] not accurately present the facts." Loja points to the BIA's statement that he "consistently testified he forgot" as being inaccurate because he also stated that he was confused. However, this statement does not show that the BIA thought that forgetting was Loja's only explanation. Rather, the BIA acknowledged Loja's purported confusion but did not find it convincing.
   Loja also states that his interpreter "felt the need to point out that they could tell that Spanish was not [Loja's] first language." We reject this argument because Loja told the IJ multiple times that he understood his interpreter.
   Loja also states that "it is common knowledge that being beaten unconscious hinders memory." This argument has no support in the record. We reject it.

inconsistency, even if reasonable and consistent on its face). Also, Loja stated multiple times that he did not remember.

Loja also argues that these inconsistencies were "a very small portion of the testimony." These inconsistencies were not minor. Loja's application for relief stated that he feared returning to Ecuador in part because the police who beat him also had killed his father. This fact is central to Loja's asylum claim. This argument fails under the REAL ID Act.

We conclude there was substantial evidence supporting the BIA's affirmance of the IJ's decision. The record provides ample support for the IJ's finding that Loja's statements were inconsistent and that his explanation was implausible.[4]

Loja's petition for review is <u>denied</u>.

---

[4] Because Loja has failed to meet his burden for asylum, he cannot prevail on the higher burden for withholding of removal. <u>See</u> <u>Li Sheng Wu</u> v. <u>Holder</u>, 737 F.3d 829, 832 n.1 (1st Cir. 2013). As to CAT relief, an applicant must show that it is "more likely than not that [he] would be tortured if removed." <u>Id.</u> (quoting <u>Zheng</u> v. <u>Gonzales</u>, 416 F.3d 97, 101 n.3 (1st Cir. 2005)). Without Loja's own testimony, the record contains nothing that shows Loja faced any harm, let alone torture.