# United States Court of Appeals
## For the First Circuit

No. 23-1841

JOSÉ ANTONIO GARCIA OLIVA,

Petitioner,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Selya, and Montecalvo,
Circuit Judges.

Kevin P. MacMurray and MacMurray & Associates on brief for petitioner.
Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation, and Virginia Lum, Attorney, Office of Immigration Litigation, on brief for respondent.

October 21, 2024

**SELYA**, **Circuit Judge**.  The petitioner, José Antonio Garcia Oliva, seeks judicial review of a final order of the Board of Immigration Appeals (BIA), which denied his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  Concluding, as we do, that the BIA's order is supported by substantial evidence, we deny the petition.

## I

We briefly rehearse the relevant facts and travel of the case.  The petitioner is a Guatemalan national who entered the United States on a tourist visa in January of 2000.  He overstayed his tourist visa and — eighteen years after his entry into the United States — applied for asylum in April of 2018.  Later, the Department of Homeland Security commenced removal proceedings against the petitioner, charging that he was present in the United States without being admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(i).  In September of 2018, the petitioner filed written pleadings in which he conceded removability but cross-applied for asylum, withholding of removal, and protection under the CAT.

The petitioner's written asylum application stated that he last left Guatemala in January of 2000.  When asked to list each of his entries into the United States, the petitioner listed only one entry:  through Miami in January of 2000.  The petitioner

stated that he did not apply for asylum within one year of his arrival in the United States because he was unaware of the legal requirement that he do so.

The petitioner's application also stated that, while in Guatemala, he worked as a bodyguard for a congressman. According to his application, the petitioner's job was dangerous. He said that since his life was constantly at risk, he fled Guatemala. The application added that he feared returning to Guatemala because he believed that he would be the target of extortions and threats by gang members. For the same reason, he was afraid of being tortured.

The petitioner's more detailed asylum affidavit, subsequently filed, reiterated that his job as a bodyguard for a congressman was very dangerous. The affidavit explained that the petitioner's uniform identified the congressman's political party: the National Advancement Party (PAN). The affidavit further stated that, as a bodyguard, the petitioner needed to carry a gun at all times.

In the petitioner's view, the petitioner's engagement with the congressman was the source of imminent peril even after his tour of duty was completed. The affidavit described an incident that allegedly occurred after the petitioner stopped working as a bodyguard. On that occasion, the petitioner was approached by two men who said that they were looking for him.

The men wanted the petitioner to go with them, but the petitioner refused. The petitioner believed that the men wanted to kill him because of his previous work as a bodyguard for PAN. The petitioner's affidavit claimed that it is not uncommon in Guatemala for rival politicians to order murders and to attack individuals who belong to different political parties.

On December 19, 2018, a hearing was held before an Immigration Judge (IJ). The petitioner testified on his own behalf. Once again, he described the perils that he feared were awaiting him in Guatemala.

At the conclusion of the hearing, the IJ rendered a decision in which she first found that the petitioner was not a credible witness. In her view, the petitioner's answers to questions were vague and, notably, his oral testimony differed in material respects from his written account (despite the petitioner's assurance that the contents of his written application were true and correct).

These discrepancies included, among other things:

- The petitioner testified that he had entered the United States numerous times during previous years, but these trips were not listed on his asylum application.

- During the hearing, the petitioner described two incidents in which armed individuals unknown to the

- 4 -

petitioner supposedly barged into a store half a block away from his home and told the proprietor that they were looking for the petitioner. But neither of these incidents was mentioned in the petitioner's written application for asylum, even in response to questions as to whether he, his family, his friends, or close colleagues had ever experienced harm, mistreatment, or threats in the past. The petitioner omitted any reference to these incidents despite them being "clearly [] responsive" to the question. Instead, his application spoke only "generally" regarding violence in Guatemala.

- The affidavit that accompanied the petitioner's asylum application did not mention these incidents at all. Rather, it related only an incident in which two men (with no mention of whether they were armed) approached the petitioner in Guatemala and sought to have him go with them.

Given these glaring discrepancies, the IJ found the petitioner's story implausible. Moreover, she questioned the legitimacy of the petitioner's fear of remaining in Guatemala both at the time of his flight and at the time of the hearing. In the IJ's view, if the petitioner "truly feared that people were looking

for him and have gotten as close to his home as just half a block away, and that they were armed, it does not make any sense . . . that [the petitioner] would remain in the country of Guatemala for an additional few months before departing for the United States when he . . . could have left that same day."

Having found the petitioner's testimony incredible, the IJ buttressed her adverse credibility determination by noting the petitioner's use of false documentation while in the United States and his repeated violations of the law (by, for example, driving a motor vehicle without a valid license). With respect to the untimeliness of the petitioner's asylum application — filed eighteen years after his arrival in the United States — the IJ found that no extraordinary circumstance excused the delay in filing.[1]

The IJ further found that the petitioner had not suffered past persecution. There was no evidence of past physical harm and the third-party threat received at a store half a block from his home did not amount to past persecution. Those threats were neither imminent nor capable of being carried out by the men who

---

[1] After finding the petitioner's asylum application to be untimely, the IJ analyzed the petitioner's claims of past and future persecution "in the alternative in the event that the" BIA did "not uphold the [IJ's] finding on the timeliness of the application." Because the BIA did not expand on the timeliness issue, and because we uphold the BIA's decision on other grounds, we, too, refrain from addressing the timeliness issue.

voiced them.  After all — as the IJ observed — the petitioner had not established that the men actually sought to harm him.  He had not even established who the men were.

The IJ went on to find that the petitioner had not established a well-founded fear of future persecution.  The petitioner did not demonstrate that if he returned to Guatemala, anyone would seek to target him either on account of his former work as a bodyguard or on account of any other protected ground.  See 8 U.S.C. § 1101(a)(42)(A).  Finally, the IJ found that the petitioner did not provide enough specific information regarding how he would be targeted in order to satisfy his burden for relief under the CAT.

The petitioner appealed the IJ's decision.  On September 14, 2023, the BIA affirmed.  The BIA reasoned that — even apart from considerations of credibility and timeliness — the petitioner had not established eligibility for asylum on account of past persecution or a well-founded fear of future persecution.  The BIA specifically noted that the petitioner's account of armed men visiting a nearby store did not rise to the level of past persecution.  The BIA also determined that the petitioner failed to make any meaningful claim that threats had been made against him in Guatemala in the past twenty years, that anyone would seek to target him on account of employment with PAN, or that his status as a former bodyguard would lead to him being harmed.  Finally,

the BIA upheld the IJ's findings that the petitioner did not establish eligibility either for withholding of removal or for protection under the CAT.

This timely petition for judicial review followed.

## II

Where, as here, the BIA's decision rests primarily on the IJ's decision, we review the two decisions as a unit. See Zaruma-Guaman v. Wilkinson, 988 F.3d 1, 5 (1st Cir. 2021). To obtain asylum, the petitioner had to show that he was a "refugee" as defined by the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1). Thus, the petitioner needed to prove that he was "unable or unwilling to return to his homeland on account of either past persecution or a well-founded fear of future persecution." Zaruma-Guaman, 988 F.3d at 5. He also had to prove that this persecution (whether occurring in the past or feared to occur in the future) was on account of one of the five statutorily protected grounds, namely, "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). When a petitioner successfully proves past persecution, a rebuttable presumption of future persecution arises. See Rivera-Coca v. Lynch, 844 F.3d 374, 378-79 (1st Cir. 2016).

In asylum cases, a petitioner may prove his entitlement to asylum "by [his] own testimony if that testimony is specific

- 8 -

and credible." Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008). By the same token, an adverse credibility determination, appropriately reached, "may in itself suffice to defeat an alien's claim for asylum." Mashilingi v. Garland, 16 F.4th 971, 977 (1st Cir. 2021). Because the petitioner's own testimony is critical to carrying his burden of establishing sufficient proof of persecution (either past or feared), we start with the IJ's determination that the petitioner's testimony was not credible. For the sake of completeness, we then address the petitioner's failed attempt to prove persecution.

Our starting point is the IJ's adverse credibility determination. We conduct our review under the deferential "substantial evidence" standard. Id. Under this standard, "[a]s long as the agency's credibility determination is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' we must accept it." Zaruma-Guaman, 988 F.3d at 5 (quoting Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009)). Absent an error of law, "we will reverse only if the record is such as to compel a reasonable factfinder to reach a contrary determination." Id. (quoting Chhay, 540 F.3d at 5).

When making credibility judgments, IJs must consider "the totality of the circumstances" and a litany of factors delineated by Congress, viz.:

> [T]he demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

The petitioner argues that the IJ's adverse credibility determination was mistaken for several reasons, including that any inconsistencies were not significant enough to justify an adverse credibility determination; that the petitioner provided candid testimony; and that the petitioner offered reasonable but uncredited explanations in response to the IJ's probing. Notwithstanding the petitioner's attack, we conclude that the IJ's adverse credibility determination withstands scrutiny.

Our review of the record leads us to conclude that the IJ acted appropriately in relying on the petitioner's differing accounts of interactions with men in Guatemala and his inconsistent testimony regarding entries into the United States to undermine his credibility. We add, moreover, that — contrary to the petitioner's importunings — the IJ appropriately considered what

- 10 -

she perceived as the petitioner's lack of candor and lack of responsiveness in finding the petitioner not credible. See Zaruma-Guaman, 988 F.3d at 6 (noting that "a judicial officer who sees and hears a witness has a superior coign of vantage in assessing that witness's credibility"). And the weight that the IJ assigned to the petitioner's various explanations, including those regarding his use of false documentation, was reasonable. Nothing about the IJ's assessments throws shade on her adverse credibility determination. See Mashilingi, 16 F.4th at 978; see also Jianli Chen v. Holder, 703 F.3d 17, 26 (1st Cir. 2012).

To be sure, the petitioner argues that some of the inconsistencies relied upon by the IJ were immaterial. That argument does not gain him any traction: the IJ specifically identified a number of inconsistencies and instances of contradictory testimony, which cumulatively persuaded her of the petitioner's lack of credibility. These included varying accounts regarding either the petitioner or a shop owner being approached by men, armed or not, and either being interrogated about the petitioner's whereabouts or being told to accompany the men. The inconsistencies were pervasive and included the petitioner's divergent versions of basic facts, such as the number of times that he had entered the United States in the past.

Even if we credit the petitioner's claim that the inconsistencies that the IJ identified did not go to the heart of

the matter, the pervasiveness of the petitioner's inconsistencies could fairly lead a reasonable factfinder to conclude that the petitioner was an unreliable witness. Mashilingi, 16 F.4th at 978. Consequently, we conclude that the IJ's adverse credibility determination is supported by substantial evidence on the record as a whole. It follows, then, that the agency's denial of the petitioner's asylum claim is unimpugnable.

### III

We next address the BIA's gloss that, even if the petitioner's asylum request did not fail for lack of credibility, he had not demonstrated either past persecution or a well-founded fear of future persecution. The petitioner contends that the armed men's multiple threats rose to the level of past persecution based on his status as a former bodyguard and/or his affiliation with a particular political party. In a similar vein, the petitioner contends that he proved a well-founded fear of future persecution based on these threats and the violent political climate that currently grips Guatemala.

These contentions are futile. The record contains ample support for the BIA's holding: the petitioner's testimony simply did not furnish sufficient evidence to establish past persecution within the meaning of our precedents. Even were we to leave to one side the adverse credibility determination, the BIA supportably found that the petitioner's evidence, taken at face

value, failed to establish that the petitioner was eligible for asylum based either on his political opinion or membership in the social group of "former bodyguards." After all, the petitioner had failed to ascribe any motivation for the men's inquiries.

So, too, the BIA supportably found that the vague, third-party threats of the unidentified men did not rise to the level of past persecution. See Ang v. Gonzales, 430 F.3d 50, 56 (1st Cir. 2005). Nor did the petitioner show an objectively reasonable basis for a well-founded fear of future persecution. See Rivera-Coca, 844 F.3d at 380; Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005). Finally, as the BIA explained, the petitioner did not meaningfully identify any continuing threat of harm against him, let alone against him on account of his political party affiliation or former work as a bodyguard.

**IV**

We need go no further. We hold that the BIA's denial of the petitioner's claim for asylum must stand. We also hold that the petitioner's counterpart claim for withholding of removal fails. See Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009). And, finally, we note that apart from country conditions reports, the petitioner did not present any evidence that, if repatriated, he would face torture with the consent or acquiescence of the Guatemalan government. Thus, the BIA's rejection of the petitioner's CAT claim must also stand. See Mendez-Barrera v.

- 13 -

<u>Holder</u>, 602 F.3d 21, 27-28 (1st Cir. 2010).  The petition for judicial review is therefore

**<u>Denied</u>**.