# United States Court of Appeals
## For the First Circuit

Nos. 21-1384, 24-1201

CHRISMA FELIN MONDZALI BOPAKA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITIONS FOR REVIEW OF ORDERS OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman, Selya, and Lynch,
Circuit Judges.

Stephanie E.Y. Marzouk, with whom Marzouk Law LLC was on brief, for petitioner.

SangYeob Kim, with whom Gilles Bissonnette was on brief for American Civil Liberties Union of New Hampshire, New Hampshire Legal Assistance, and University of Maine School of Law Refugee and Human Rights Clinic, amici.

Jennifer A. Bowen, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, with whom Anthony C. Payne, Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, and Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, were on brief, for respondent.

December 13, 2024

**LYNCH**, <u>Circuit Judge</u>.  This case presents consolidated petitions for review by Chrisma Felin Mondzali Bopaka of the Republic of the Congo.  Bopaka petitions for review of a final order of the Board of Immigration Appeals affirming the Immigration Judge's denials of his applications for asylum, withholding of removal ("WOR"), and protection under the Convention Against Torture ("CAT").  <u>See</u> 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); <u>see also</u> Convention Against Torture, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988).  He also petitions for review of the BIA's denials of his motions to remand and to reopen.

The IJ found Bopaka not to be credible based on numerous inconsistencies and key material omissions in his testimony, declaration, applications for relief, and the documentary evidence.  The BIA found no error in the IJ's adverse credibility determination or in the IJ's finding that Bopaka's corroborating evidence was insufficient to meet his burden of proof for any of his claims.

Substantial evidence supports the IJ's and BIA's denials of asylum, WOR, and protection under the CAT.  The BIA did not abuse its discretion in denying Bopaka's motions to remand and to reopen.  We deny the petitions for review.

## I.

Bopaka entered the United States on or around August 23, 2018, without valid entry documents, and was served with a Notice to Appear charging him with removability. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). On July 22, 2019, Bopaka conceded removability. He sought asylum and WOR, purportedly based on his political opinion and membership in the particular social group "direct family members of Mr. Sebastien Mondzali," and relief under the CAT, and submitted a declaration, sworn before the IJ, in support of his claims.

At the May 20, 2020 hearing before the IJ, Bopaka, represented by counsel and assisted by a Lingala language interpreter, was the sole witness to testify. The IJ found Bopaka's testimony to be not credible for multiple reasons described below.

"Considering the totality of the circumstances and all relevant factors," including "multiple inconsistencies" and "[k]ey omissions," the IJ found that Bopaka "did not testify credibly." The IJ further found that "[a]lthough [Bopaka] [had] submitted some documentary evidence in support of his claim, this evidence [wa]s insufficient to overcome the adverse credibility finding."

Accordingly, Bopaka's asylum claim failed because he had not "met his burden to prove that he [had] suffered past persecution or ha[d] a well-founded fear of future persecution on

account of a protected ground," and the WOR claim necessarily failed under its more stringent standard and "the objective documentary evidence [did not otherwise] entitle[] [Bopaka] to relief." "[B]ased on the credible objective evidence in the record, [Bopaka] failed to satisfy th[e] burden for withholding of removal under the CAT."

On June 19, 2020, Bopaka filed a notice of appeal with the BIA, challenging the adverse credibility determination and all denials of relief. On August 18, 2020, Bopaka also filed a motion to remand, asserting that it was "in light of new material and substantial evidence."

On April 15, 2021, the BIA ruled on both. It found that the adverse credibility finding was not clearly erroneous and the IJ's conclusion that Bopaka had not met his burden of proof "to establish his eligibility for relief [wa]s supported by the record." As to the motion to remand, the BIA applied 8 C.F.R. § 1003.2(c)(1): "where a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions" (quoting Matter of Coelho, 20 I&N Dec. 464, 471 (BIA 1992)). The BIA denied the motion for two independently sufficient reasons: (1) it was "not persuaded that the issues raised establish that the evidence was 'not available and could not have been discovered or presented at the former hearing'" (quoting 8 C.F.R. § 1003.2(c)(1)); and (2)

- 5 -

it was "not persuaded that the additional evidence would likely change the result of the proceedings."[1]

On October 13, 2021, almost six months after the BIA's denial of his claims for relief, Bopaka filed a motion to reopen with the BIA, arguing that his "prior attorneys [had been] ineffective" and "[t]heir errors affected the IJ's findings, causing prejudice," and that "[c]hanged country conditions in the Republic of Congo merit[ed] reopening." The BIA denied the motion, holding that "even assuming [the motion to reopen] had been timely filed it would fail on the merits." Bopaka had "not shown a reasonable probability that, but for his attorneys' alleged mistakes, he would have prevailed on his claim." Further, "[Bopaka's] new evidence d[id] not overcome the prior credibility finding, present a new claim independent of his discredited testimony, or otherwise establish that country conditions have changed in a manner that is material to his eligibility for relief or protection from removal." Bopaka also had "not submitted evidence establishing his circumstances as exceptional" to warrant sua sponte reopening.

---

[1] Before this court, Bopaka does not argue and so has waived any challenge to the BIA's decisions declining to exercise its sua sponte authority in its decisions denying his motions to remand and to reopen. See Morales-Morales v. Sessions, 857 F.3d 130, 135 (1st Cir. 2017).

- 6 -

"Where, as here, the BIA's decision rests primarily on the IJ's decision, we review the two decisions as a unit." Garcia Oliva v. Garland, 120 F.4th 1, 5 (1st Cir. 2024). "We review 'factual findings, including credibility determinations . . . under the familiar substantial evidence standard,'" under which "we must uphold the BIA's decision 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Loja-Paguay v. Barr, 939 F.3d 11, 15 (1st Cir. 2019) (emphasis added) (first quoting Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009); then quoting Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006)). For adverse credibility determinations,

> we narrowly inquire whether: (i) the discrepancies articulated by the IJ and/or the BIA are actually present in the administrative record; (ii) the discrepancies generate specific and cogent reasons from which to infer that petitioner or his witnesses provided non-creditworthy testimony; and (iii) petitioner failed to provide a persuasive explanation for these discrepancies.

Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008).

"The REAL ID Act permits the IJ to consider inconsistencies in an applicant's statements, 'without regard to whether an inconsistency ... goes to the heart of the applicant's claim.'" Loja-Paguay, 939 F.3d at 15 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Under that standard, the IJ considers "the

totality of the circumstances, and all relevant factors," including "the consistency between the applicant's or witness's written and oral statements" and "the consistency of such statements with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(iii).

"To be eligible for asylum, an applicant must show 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Loja-Paguay, 939 F.3d at 15 (quoting 8 U.S.C. § 1101(a)(42)(A)). "Asylum . . . has both a subjective and an objective component: it requires a showing that the applicant 'genuinely fears persecution,' in addition to proof that the 'fear is objectively reasonable.'" Aguilar-Escoto v. Sessions, 874 F.3d 334, 337-38 (1st Cir. 2017) (quoting Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004)).

"An applicant's testimony alone can meet this burden, but if the agency finds that the testimony is not truthful, 'that determination strips the testimony of probative force and permits the agency to . . . discount it.'" Loja-Paguay, 939 F.3d at 15 (quoting Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007)). "[A]n adverse credibility determination, appropriately reached, 'may in itself suffice to defeat an alien's claim for asylum.'" Garcia Oliva, 120 F.4th at 5 (quoting Mashilingi v. Garland, 16 F.4th 971, 977 (1st Cir. 2021)). "[A]bsence of easily obtainable

- 8 -

corroborating documentation can be the final straw." Rivera-Coca v. Lynch, 844 F.3d 374, 379 (1st Cir. 2016) (quoting Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008)).

The BIA's finding that there was no clear error in the IJ's adverse credibility determination is well-supported by the record, which is replete with inconsistencies and omissions. The alleged basis of Bopaka's claims for relief is summarized as follows in his written declaration submitted in support of his applications:

> I am afraid to return to the Congo because of my family's involvement in politics in opposition to the current tyrannical leader, President Denis Sassou Nguesso. My entire family was murdered for my father's opposition to the government and its attempts at amending our constitution for the standing regime's benefit. My later involvement in protests put me in direct danger of kidnapping, harm, torture, and death at the hands of authorities working under the direction of the Nguesso regime. I was threatened as an opposition member and for being the son of Sebastien Mondzali. If I return to Congo, I will likely be kidnapped, physically and emotionally harmed, tortured, and killed. There is no place in the country where I would ever be safe.

The BIA expressly discussed four inconsistencies and omissions in comparing Bopaka's declaration, asylum application, documentary evidence, and testimony before the IJ.

The record supports the BIA's and IJ's findings that "[Bopaka's] testimony that he was arrested in March 2016 [wa]s inconsistent with his asylum application and [wa]s omitted from

his written declaration." Bopaka's asylum application checked "no" to the question "[h]ave you . . . ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States?" In response to a separate question about whether he was afraid that he would be subjected to torture if returned to the Congo, he stated: "I was almost arrested and killed during protests for the release of opponents in jail in April and May 2018" (emphasis added). In contrast, Bopaka testified that in March of 2016 -- over two years before the almost-arrest date in his application -- he "was arrested in the morning, and around noon, [he] was released" (emphasis added). When questioned in cross-examination about this inconsistency, Bopaka stated that "there might be an error in the document." When asked about the omission in his declaration, Bopaka said "[m]aybe the person who did the translation might have omitted it." That answer itself was inconsistent with his other statements. As the BIA noted, Bopaka had testified that his application had been read to him in Lingala and that he understood the contents of both the application and the declaration. He had also sworn to the application and declaration on the record after conferring with his attorney.

The BIA next focused on the material "omission regarding [Bopaka's] departure from the Republic of the Congo." The application and declaration said nothing about how he had left the

- 10 -

Congo.  Bopaka testified that he used a passport that his godfather had helped him acquire in 2017 and left the Congo from its international airport.  He testified that government agents were preventing him from leaving the Congo, but his godfather, a former general, "went and hid[] [him] in a market," where he spent three to four days before his godfather "picked [him up] from there [at night], and helped [him] escape."  When cross-examined about this omission, Bopaka stated: "Yes, I said that my life was in danger, and therefore, I was supposed to escape the country."

Third, the BIA noted that "[t]he record further contains a significant discrepancy between [Bopaka's] testimony and his corroborating evidence" about his family.  Bopaka testified that his "father was an attorney, and he owned [a] couple [of] farms." However, he submitted his father's death certificate from the Congo, which listed his father's "profession" as "[c]hauffeur."

Next, the BIA pointed out Bopaka's several contradictory statements as to "whether he has a son."  Bopaka's application stated "I do not have any children."  But when questioned under oath by immigration officials on his entry into the United States, Bopaka stated that he was traveling with his son Samuel.  Bopaka admitted that Samuel was not his biological son, but testified that Samuel was his brother's child and that Bopaka had adopted Samuel.  But the Congo documents Bopaka had submitted stated that Bopaka was only "the legal guardian" of Samuel.  When cross-

examined about these documents, Bopaka non-responsively stated that he "was responsible for everything about this child." But he immediately contradicted himself, agreeing that "there was [no] significant period of time where [he] w[as] the only one with [Samuel]." Bopaka had also stated to immigration officials under oath that Samuel's mother was Nolene Itoue, who was in the Congo. This statement was contradicted by a motion to sever Samuel's case from Bopaka's case, in which Samuel had stated that his biological mother was Sandrine Poaty, with whom he was residing in Louisville, Kentucky. When cross-examined about this inconsistency, Bopaka admitted: "Your honor, for that, I will ask for forgiveness, because at that time, I did not tell the truth."

Where, as here, "the IJ specifically identified a number of inconsistencies" and omissions, "which cumulatively persuaded [him] of the petitioner's lack of credibility," substantial evidence supports the IJ's adverse credibility determination. Garcia Oliva, 120 F.4th at 6; see also Mashilingi, 16 F.4th at 978 ("[T]he inconsistencies in the petitioner's testimony were specifically identified, well-documented, hard as a group to reconcile or explain, and cumulatively persuasive of a lack of credibility."); Legal v. Lynch, 838 F.3d 51, 54 (1st Cir. 2016) ("[T]he inconsistencies noted by the IJ are of a type that create strong doubts about the veracity of [the petitioner's] story.").

These numerous inconsistencies suffice to provide substantial evidence supporting all three denials of relief. Neither Bopaka's testimony nor his other evidence met his burden. See Garcia Oliva, 120 F.4th at 5 ("[T]he petitioner's own testimony is critical to carrying his burden of establishing sufficient proof of persecution (either past of feared). . . ."). Substantial evidence supports the agency's determination that the other objective evidence does not meet Bopaka's burden of proof to show eligibility for asylum.

The BIA noted that Bopaka did not provide testimony or a statement from his brother with whom he says he came to the United States and who Bopaka agreed had "experienced some of the same harm and had the same fear as [he] d[id]." When asked why, Bopaka failed to say. He responded: "I don't know. I don't know if my attorney had asked my brother to do so." Substantial evidence supports the agency's determination that this explanation was not reasonable.

Though Bopaka provided death certificates of his family members that stated they were "declared deceased . . . [b]y assassination at [their] domicile," the agency supportably found them insufficient due to the inconsistencies in Bopaka's father's profession described above.

The country conditions reports regarding general civil unrest and political turmoil in the Congo were not particular as

- 13 -

to Bopaka or his family.  See Mendez-Barrera v. Holder, 602 F.3d 21, 28 (1st Cir. 2010) ("[C]ountry conditions reports, standing alone, do not carry the day" where they do not "proffer any particularized facts relating to [a petitioner's] specific claim.").

The denial of WOR relief is also supported by the record. "[W]ithholding of removal requires a higher likelihood of persecution than asylum."  Aguilar-Escoto, 874 F.3d at 337. "Because the factual underpinnings of this claim are inextricably intertwined with the factual underpinnings of the [asylum] claim, the IJ's supportable adverse credibility determination dooms both claims."  Mazariegos-Paiz v. Holder, 734 F.3d 57, 65 (1st Cir. 2013).  Nor did Bopaka meet the higher burden for WOR with his objective evidence given the major discrepancy regarding his father's death certificate and the non-particularized nature of his country conditions reports, as the BIA supportably held.

Substantial evidence likewise supports the denial of CAT relief.  A CAT applicant "must establish 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  Ali v. Garland, 33 F.4th 47, 53 (1st Cir. 2022) (quoting 8 C.F.R. § 1208.16(c)(2)).  To make this showing, an applicant must

> offer specific objective evidence showing that he will be subject to: (1) an act causing severe physical or mental pain or suffering;

- 14 -

(2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

Id. (quoting Mazariegos v. Lynch, 790 F.3d 280, 287 (1st Cir. 2015)).

Substantial evidence supports the BIA's holding that, "because [Bopaka's] claim under the CAT is based on the same testimony that the Immigration Judge found not credible, and . . . [Bopaka's] corroborating evidence, including the country conditions evidence, is insufficient to establish his claim, the record also supports the conclusion that [Bopaka] has not established eligibility for protection under the CAT." See Mashilingi, 16 F.4th at 980 ("Because the petitioner's proof [of eligibility for protection under the CAT] rested mainly on his own testimony, the adverse credibility determination sinks that claim as well."). As Bopaka's own testimony was not credible, that testimony did not support his CAT claim. The record contains nothing other than his not-credible testimony that shows Bopaka suffered any physical harm or torture. See Loja-Paguay, 939 F.3d at 16 n. 4.

## III.

"We review for abuse of discretion the BIA's denial of a motion to reopen," Djokro v. Garland, 102 F.4th 39, 44 (1st Cir.

- 15 -

2024), under which "the petitioner must show that the BIA either 'committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational manner,'" Sihotang v. Sessions, 900 F.3d 46, 50 (1st Cir. 2018) (quoting Bbale v. Lynch, 840 F.3d 63, 66 (1st Cir. 2016)). "Motions to reopen removal proceedings are disfavored because they impinge upon 'the compelling public interests in finality and the expeditious processing of proceedings.'" Id. at 49 (quoting Bbale, 840 F.3d at 66). "To succeed on his motion to reopen, the petitioner ha[s] to . . . 'introduce new, material evidence that was not available at the original merits hearing.'" Id. at 50 (quoting Perez v. Holder, 740 F.3d 57, 62 (1st Cir. 2014)). "Evidence is not material unless it has some impact on the outcome of a petitioner's underlying case." Perez, 740 F.3d at 62.

The BIA's denials of Bopaka's motions to remand and to reopen were not an abuse of its discretion. Bopaka's motion to remand was purportedly based on "new facts." The BIA properly treated it as a motion to reopen and so do we. See Falae v. Gonzáles, 411 F.3d 11, 14 (1st Cir. 2005).

The motion to remand sought to submit new evidence as to Bopaka's three claims for relief, which he alleged was not available at the time of his hearing. This evidence was: (1) "a copy of [a] marriage certificate showing that [Bopaka] is married to Choisie"; (2) "a letter from [Bopaka's] brother, notably about

- 16 -

the profession of [Bopaka's] father, Sebastien Mondzali"; and (3) "an expert affidavit from Dr. Brett Carter." The Carter affidavit stated that Bopaka's affidavit "is entirely consistent with [his] knowledge of the country" and concluded from this that, "[a]s a result of his convictions and his previous activism, Mr. Mondzali would likely be arrested upon his return to Congo and again physically assaulted or even killed."

The BIA gave two different grounds to deny the motion to remand. The BIA's second ground -- that Bopaka's submitted evidence would not likely have changed the result of the proceedings -- is independently sufficient to uphold its denial of Bopaka's motion to remand.[2] The BIA correctly held that "the credibility concerns identified in the record [we]re significant and the submitted evidence d[id] not sufficiently address several of the issues raised above related to whether [Bopaka] was arrested, how he left his home country, and the inconsistent information on his father's death certificate." The BIA ruling rested on numerous and substantial other inconsistencies and omissions; thus, the reference in the motion to remand to Bopaka's marriage did not undercut those holdings. The short, generalized letter from Bopaka's brother fails to address why their father's

---

[2] We need not reach Bopaka's and amici's argument that the BIA erred in holding that Bopaka had failed to show that his submitted evidence had been previously unavailable under 8 C.F.R. § 1003.2(c)(1).

- 17 -

death certificate listed his profession as chauffer and does not address the other inconsistencies and omissions noted by the BIA.[3]

The testimony from the expert merely suggested that Bopaka's account was plausible based on general country conditions. But the issue was not whether Bopaka's account was plausible but rather whether it was credible, and his testimony was not credible. See Escobar Larin v. Garland, __F.4th__, 2024 WL 4986341, at *6 (1st Cir. 2024) (holding that the BIA did not abuse its discretion in denying petitioner's motion to reopen on materiality grounds when the motion was based in part on expert statements that "it [was] entirely possible" petitioner would be detained in his home country if removed). And the expert's report did not undermine the IJ's conclusions that Bopaka's testimony about his personal experience -- his claimed arrest, his departure from the Congo, and the alleged status of his family as political dissenters -- suffered from too many inconsistencies and omissions

---

[3] Bopaka argues that "[w]hen one aspect of the evidence has been discredited, remand is required so that the immigration judge may make the credibility determination based on all remaining factors collectively," citing Diaz Ortiz v. Garland, 23 F.4th 1, 15-16 (1st Cir. 2022) (en banc). His argument is simply wrong and is not supported by Diaz Ortiz. Diaz Ortiz concerned a situation where evidence considered by the IJ in finding a petitioner not credible was itself not reliable. Id. at 22. None of Bopaka's submitted evidence in support of his motion to remand undermined the reliability of the evidence underlying the IJ's credibility determination. The motion to remand did not undermine the IJ's adverse credibility holding.

to be believable.[4]  See Mashilingi, 16 F.4th at 979 ("[T]he quality of an expert's opinions cannot be better than the quality of the information supplied to the expert.").

**IV.**

The BIA did not abuse its discretion in denying Bopaka's motion to reopen, which was based on alleged ineffective assistance of counsel and changed country conditions.  Bopaka's ineffective assistance of counsel claim was based on the following allegations: (1) "The I-589's shoddy preparation caused the IJ to find a discrepancy" on the issue of whether he had been previously arrested or detained; (2) his attorney "disclosed confidential information that was detrimental to Mr. Mondzali Bopaka" by stating in her termination letter that "[y]ou and your family have not produced any independent and/or objective evidence to corroborate your claim of fear of return to the Congo"; and (3) his attorney "filed untranslated documents with the Court," namely an article that stated "Mr. Mondzali Sebstien, a former member of the MCDDI, one of the main opposition parties back then, was cowardly

---

[4]  Bopaka argues that the BIA "failed to consider whether the new evidence could meet the objective burden of proof sufficient to overcome credibility concerns for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) and the [CAT]."  This argument is unavailing.  Bopaka's claims for asylum, WOR, and protection under the CAT rested on the same basic facts, and Bopaka presented the same evidence in support of his motion to remand each of his claims.  The BIA supportably found that this evidence would not likely have changed the outcome of any of his claims.

- 19 -

assassinated at his home, together with his wife and children" and "two survived this killing[,] Mondzali Elobaloba Fridalin Brunel and Mondzali Bopaka Chrisma." Bopaka also alleged changed country conditions on the basis that "the 2020 Human Rights Report for the Republic of the Congo indicate[d] intensifying retaliation against political opponents."

The BIA did not abuse its discretion in denying Bopaka's motion to reopen on the grounds that "[Bopaka's] new evidence does not overcome the prior credibility finding, present a new claim independent of his discredited testimony, or otherwise establish that country conditions have changed in a manner that is material to his eligibility for relief or protection from removal." Bopaka's first allegation in support of his ineffective assistance of counsel claim related only to the discrepancy regarding whether he had been previously detained or arrested and still failed to address his material omission regarding how he left the Congo and the inconsistencies related to his father's death certificate and whether he had a son. The untranslated article provided evidence regarding his father's political participation but still did not address the inconsistency related to his father's death certificate and the other material omissions and inconsistencies. The allegedly changed country conditions report similarly failed to address these material omissions and inconsistencies. As to the motion's reference to the statement in Bopaka's prior counsel's

withdrawal letter, the agency did consider Bopaka's submitted objective evidence and there is no basis to think that the agency gave any weight to this prior counsel's statement in reaching its decision.

The petitions for judicial review are **denied**.