# United States Court of Appeals
## For the First Circuit

No. 24-1695

MARCOS DA SILVA BORGES; ELIANE MARIA SILVA TEIXEIRA BORGES;
A.S.B.; and D.L.S.B.,

Petitioners,

v.

PAMELA J. BONDI, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman, Howard, and Aframe,
<u>Circuit Judges</u>.

Annelise M.J. de Araujo and Stefanie Fisher, with whom Araujo & Fisher, LLC was on brief, for petitioners.

Allison Frayer, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, with whom Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Sarah A. Byrd, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

July 18, 2025

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela J. Bondi is automatically substituted for former Attorney General Merrick B. Garland as Respondent.

**RIKELMAN**, **Circuit Judge**.   In this immigration case, Marcos Da Silva Borges and his family claim that the Immigration Judge (IJ) applied the incorrect standard of proof during their removal proceedings.   The Borges family members contend that, because they were charged with inadmissibility rather than deportability, the government had the burden to prove that they were noncitizens by "clear, unequivocal, and convincing" evidence, which they claim is a higher standard than merely "clear and convincing" evidence.   The family members also argue that the government presented insufficient evidence to meet this higher standard.   The Board of Immigration Appeals (BIA) denied their appeal, and they petitioned our court for review.

Our recent decision in Rosa v. Bondi, ___ F.4th ___, 2025 WL 1912130 (1st Cir. Jul. 11, 2025), resolves this appeal and requires us to rule in favor of the Borges family. Rosa concerned the same legal issues presented in this case and held that the "clear, unequivocal, and convincing" standard applies in removal proceedings of individuals charged with inadmissibility, and that this standard imposes a higher burden of proof on the government than the "clear and convincing" standard.   Because the agency applied the incorrect legal standard in evaluating whether the Borges family was removable, we grant the petition and remand to the agency for further proceedings consistent with this opinion.

## I. BACKGROUND

The lead petitioner, Marcos Da Silva Borges, his wife and co-petitioner, Eliane Maria Silva Teixeira Borges, and their two young children, A.S.B. and D.L.S.B., entered the United States in October 2021, near San Luis, Arizona. At the time, A.S.B. was seven years old and D.L.S.B. was two years old.

An immigration officer examined the Borges family members upon entry and, the next day, formally placed them into removal proceedings by issuing notices to appear (NTAs). In the NTAs, the government alleged that the family members were citizens of Brazil and charged them as inadmissible and removable as "alien[s] present in the United States without being admitted or paroled" under section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). See INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i); see also INA § 101(a)(3), 8 U.S.C. § 1101(a)(3) (defining the term "alien" as "any person not a citizen or national of the United States").

The Borges family appeared with counsel at a hearing before the IJ in September 2022. That same day, the Department of Homeland Security (DHS) submitted to the IJ an Enforce Alien Removal Module View Encounter Summary ("EARM summary") for each family member as evidence of their alienage. Each EARM summary included information about the individual family member, including his or her name, date of birth, A-number (a unique identification

- 3 -

number assigned by DHS), physical characteristics, and alleged citizenship. Each EARM summary also included an "I-213 Narrative" that described the family member's encounter with Customs and Border Patrol.

The Borges family denied all the factual allegations and the charges of removability. The family members also moved to terminate the removal proceedings, claiming that the government did not meet its burden to demonstrate that they were noncitizens because the EARM summaries were "incoherent and notably fail[ed] to reference any passport or other documentation to demonstrate [their] alienage." Specifically, they claimed that the EARM summaries omitted the name of the officer who examined them, the disposition of the examination, the signatures of both the border patrol agent and examining officer, any mention of a foreign passport or other identity document, and any information about their last entry into the United States and their place of permanent residence.

The government did not file a written response to the family's motion to terminate but did orally respond during a later hearing with the IJ in November 2022. It argued that the EARM summaries did not require officer signatures, did list each individual's "country of origin" and entry date, and should be accepted by the IJ because they are "printout[s] from a Government database, which [are] inherently [] business record[s]."

- 4 -

The next day, the IJ denied the family's motion to terminate the removal proceedings in a form order. The IJ found that the government "met . . . its burden of proving by clear and convincing evidence that [the Borges family is] removable as charged." And, in January 2023, the IJ ordered the family's removal after confirming during another hearing that they were not seeking voluntary departure or any other form of relief from removal. In the removal order, the IJ explained that they were "removable/inadmissible as charged in the Notice to Appear" based on their "admissions and concessions."

The Borges family appealed to the BIA. The family members claimed that the IJ clearly erred in finding them removable based on their "admissions and concessions" when they, in fact, denied the NTAs' allegations and charges and moved to terminate the removal proceedings. The BIA agreed and remanded to the IJ for a "full decision" that "explains the evidentiary basis for [its] decision to sustain the removal charge[s] [and] addresses the merits of the [family's] motion to terminate."

The IJ issued a new decision in October 2023. After concluding that the government had the burden to prove the family members' alienage "by clear and convincing evidence," the IJ found that the government satisfied its burden by submitting the EARM summaries. According to the IJ, the summaries were "sufficiently detailed and there is nothing to indicate that the information

contained therein came from anyone other than the [Borges family members]." Based on these findings, the IJ again denied the family's motion to terminate and sustained the charges of removability under section 212(a)(6)(A)(i) of the INA.

The Borges family appealed once more to the BIA, raising two arguments. First, the family contended that the IJ applied the wrong standard of proof when it required the government to prove alienage only by "clear and convincing" evidence rather than by "clear, unequivocal, and convincing" evidence. Second, the family argued that the government did not meet this higher standard of proof because the EARM summaries were unreliable and omitted key information. And the family emphasized that the EARM summaries could not be authenticated because they lacked a signature from the agent who prepared them. They also highlighted that the forms included only generic narratives. For example, the family pointed out that the EARM summary for their then-two-year-old child claimed that the child "'indicated' that they understood [their] right [to communicate with a Consular Officer] but declined to speak with anyone at this time."

The BIA rejected the family's arguments about the standard of proof and the unreliability of the EARM summaries and dismissed the appeal in July 2024. In doing so, it adopted and affirmed the IJ's decision. The BIA first found that the IJ applied the correct evidentiary standard to evaluate alienage

because "clear and convincing" and "clear, unequivocal, and convincing" were the same standard. It also concluded that the IJ did not clearly err in finding that the EARM summaries were sufficiently reliable, such that the government had met its burden to prove alienage. Finally, because the family had conceded proper service of the NTAs and did not seek any forms of relief from removal, the BIA found that the IJ correctly denied the motion to terminate the removal proceedings.

The Borges family filed a timely petition for review.

## II. STANDARD OF REVIEW

"Where, as here, the BIA's decision rests primarily on the IJ's decision, we review the two decisions as a unit" and "refer to the IJ and the BIA jointly as 'the agency.'" Rosa, ___ F.4th ___, 2025 WL 1912130, at *2 (quoting Garcia Oliva v. Garland, 120 F.4th 1, 5 (1st Cir. 2024)). We review the agency's legal conclusions, including determinations of the appropriate standard of proof, de novo. See id. We review factual findings under the substantial evidence standard, accepting the agency's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)).

### III. DISCUSSION

As we previewed above, the Borges family raises two primary issues on appeal. First, the family claims that the agency erred in failing to require the government to prove alienage by "clear, unequivocal, and convincing" evidence. Further, the family contends that the "clear, unequivocal, and convincing" standard is more demanding than the "clear and convincing" standard that the agency applied. Second, the family argues that the government could not rely on the EARM summaries to satisfy the applicable standard.

We agree with the Borges family that the agency should have applied the "clear, unequivocal, and convincing" standard and that this standard is more demanding than the "clear and convincing" standard. See Rosa, ___ F.4th ___, 2025 WL 1912130, at *3-4. Thus, we remand to the agency so that it can determine in the first instance whether the EARM summaries meet that higher standard. For that reason, we do not consider the family's argument about the unreliability of the summaries.

In Rosa, we reviewed similar arguments and reached two critical holdings, both of which support the family's contentions.[1]

---

[1] We initially issued the opinion in Rosa on March 13, 2025. Subsequently, the government filed a petition for panel rehearing. Although the government had "previously argued [in Rosa] that the 'clear and convincing evidence' standard applied," it shifted its position in its petition for panel rehearing to "argue[] that this

First, we concluded that the government has the burden to demonstrate the alienage of individuals charged with inadmissibility, like the Borges family members, by "clear, unequivocal, and convincing" evidence. See id. at *3. To do so, we relied on the Supreme Court's decision in Woodby v. Immigration & Naturalization Service, which held that the government must "establish the facts supporting deportability by clear, unequivocal, and convincing evidence." 385 U.S. 276, 277 (1966); see Rosa, ___ F.4th ___, 2025 WL 1912130, at *3; see also Spyropoulos v. Immigr. & Naturalization Serv., 590 F.2d 1, 2, 4 (1st Cir. 1978) (in a case concerning deportation based on excludability/admissibility, citing Woodby as imposing "clear, unequivocal, and convincing" standard of proof on the government).

Second, we also held in Rosa that "clear, unequivocal, and convincing" was a more demanding standard than "clear and convincing." See Rosa, ___ F.4th ___, 2025 WL 1912130, at *3-4. We quoted the Supreme Court's assertion that "[t]he term 'unequivocal,' taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." Id. at *3 (alteration in original) (quoting

_____

circuit's case law" required the application of the "clear, unequivocal, and convincing evidence" standard. Rosa, ___ F.4th ___, 2025 WL 1912130, at *3 n.4. In response, we issued a modified opinion in Rosa on July 11, 2025. We refer only to the reissued opinion here.

- 9 -

Addington v. Texas, 441 U.S. 418, 432 (1979)); see also, e.g., Matter of Patel, 19 I. & N. Dec. 774, 783 (BIA 1988) (also citing Addington to explain that "[t]he clear and convincing standard imposes a lower burden than the clear, unequivocal, and convincing standard . . . because it does not require that the evidence be unequivocal or of such a quality as to dispel all doubt."). Looking to the text of the INA, we further noted that the statute imposes a "clear and convincing" standard of proof in some situations and a "clear, unequivocal[,] and convincing" standard in others, an indication that "the word 'unequivocal' likely adds something to the government's burden." Rosa, ___ F.4th ___, 2025 WL 1912130, at *4 (citing, as examples, 8 U.S.C. § 1229a(c)(3) and 8 U.S.C. § 1229a(b)(5)(A), respectively). Finally, we reasoned that we must assume that Congress was aware of Supreme Court case law when it amended the INA. See id. Thus, we held that we were "duty-bound to conclude" that "clear, unequivocal, and convincing" was a higher standard of proof than "clear and convincing." Id. Based on those two holdings, we granted the petition for review in Rosa, vacated the agency's order, and remanded to the agency for further proceedings to determine whether the government had met its burden under the correct standard. See id. at *4-5.

The government has failed to provide any basis for distinguishing this case from Rosa. Although Rosa was initially decided in mid-March 2025, about five weeks after oral argument in

this case, and then modified in mid-July 2025 after panel rehearing, the government did not submit a 28(j) letter contending that we should not apply Rosa. And in its briefing to us, it presented only one argument that we did not consider in Rosa: it claimed that the Supreme Court equated the two standards of proof at issue here in California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater, 454 U.S. 90 (1981). But the Court did no such thing in Cooper, which concerned the standard of proof required by the First Amendment for obscenity claims. See id. at 90. The government relies on a single sentence and footnote in Cooper, in which the Court stated that "[t]hree standards of proof are generally recognized" and noted that both "clear and convincing" and "clear, unequivocal, and convincing" represent "a higher probability than is required by the preponderance-of-the-evidence standard." Id. at 93 & n.6 (emphasis added). This statement, however, does not undermine (let alone implicitly repudiate) the Supreme Court's determination in Addington, as described above, that "[t]he term 'unequivocal,' taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." 441 U.S. at 432. After all, Cooper cites Addington with approval. See Cooper, 454 U.S. at 93. And, as we said in Rosa, we are bound to take Addington "at face value" and treat the "clear, unequivocal, and convincing" standard as more

demanding than the "clear and convincing" standard.  <u>Rosa</u>, ___ F.4th ___, 2025 WL 1912130, at *4.

Thus, <u>Rosa</u> controls here.

## IV. CONCLUSION

For all these reasons, we **<u>grant</u>** the petition, **<u>vacate</u>** the BIA's order, and **<u>remand</u>** to the agency for further proceedings consistent with this opinion.

**- Concurring Opinion Follows -**

**HOWARD**, <u>Circuit Judge</u>, **concurring**. I join the panel opinion, as I agree that we are bound by our recent decision in <u>Rosa</u> v. <u>Bondi</u>, ___ F.4th ___, 2025 WL 1912130 (1st Cir. Jul. 11, 2025). But I have doubts about the correctness and wisdom of the direction that our law is taking in its identification of the appropriate burden of proof in cases such as this one.

The Immigration and Nationalization Act ("INA") recognizes two categories of noncitizens (or "aliens" as termed in the statute)[2] who may be subject to removal proceedings: those who have not been admitted[3] into the United States and are found to be "inadmissible" pursuant to 8 U.S.C. § 1182, and those who have been admitted and are found to be "deportable" under 8 U.S.C. § 1227. <u>See</u> 8 U.S.C. § 1229a(e)(2). While the INA provides that "the [government] has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable," 8 U.S.C. § 1229a(c)(3)(A), there is no comparable provision establishing the government's burden in proving the alienage of a person charged

---

[2] As defined by the INA, "alien" refers to "any person not a citizen or a national of the United States." 8 U.S.C. § 1101(a)(1).

[3] The term "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

- 13 -

with inadmissibility.[4]  See Rosa, ___ F.4th ___, 2025 WL 1912130, at *3.  The Supreme Court's decision in Woodby v. INS, 385 U.S. 276 (1966), fills this gap and requires that alienage must be proven by "clear, unequivocal, and convincing evidence."  As I explain further below, however, the Supreme Court's cases suggest that Woodby's "clear, unequivocal, and convincing" burden is substantively equivalent to the "clear and convincing" burden that we commonly encounter in immigration and other civil contexts.  But to hold that the former imposes a higher burden on the government than the latter creates a questionable and likely perverse disparity between the protections afforded potentially deportable aliens and those provided to individuals charged with inadmissibility.

## I.

A review of several earlier Supreme Court decisions provides context for how the Woodby Court understood the "clear, unequivocal, and convincing" standard of proof.  The Court first imposed this standard in the immigration context in a case involving denaturalization.  See Schneiderman v. United States, 320 U.S. 118, 125 (1943).  In Schneiderman, the Court considered whether the petitioner's naturalization had been properly revoked

___

[4] Once the government proves that the individual charged is an alien, the burden shifts to the alien to prove that "he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged."  8 C.F.R. § 1240.8.

- 14 -

twelve years after it was first granted. 320 U.S. at 119-20. Analogizing to the standard applicable in the case of a public grant of land, the Court held that "[t]o set aside such a grant [of citizenship] the evidence must be 'clear, unequivocal and convincing' -- 'it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt." Id. at 125 (quoting Maxwell Land-Grant Case, 121 U.S. 325, 381 (1887) (concerning standard of proof to declare void a patent granting tract of land)).[5] But the Schneiderman Court was not wed to this exact turn of phrase in defining the appropriate standard of proof. In fact, throughout its opinion the Court repeatedly articulated the government's burden without using the word "unequivocal" at all, variably describing the burden as requiring "evidence of a clear and convincing character," id. at 123; "the clearest sort of justification and proof," id.; "more than a bare preponderance of the evidence," id. at 125; and "such a preponderance of the evidence that the issue is not in doubt," id. at 158.[6]

---

[5] In the same breath, the Schneiderman Court also cited to United States v. Rovin, 12 F.2d 942 (E.D. Mich. 1926). See Schneiderman, 320 U.S. at 125. Significantly, Rovin explained that to set aside a grant of citizenship, the government must establish "by clear and convincing evidence" that the certificate of citizenship was obtained by fraud. 12 F.2d at 944.

[6] In cases after Maxwell Land-Grant Case, the Supreme Court was similarly varied in the language that it used to describe the proof necessary to revoke land patents, often omitting the word "unequivocal" altogether. See, e.g., Wright-Blodgett Co. v. United States, 236 U.S. 397, 403 (1915) (citing Maxwell Land-Grant

- 15 -

At bottom, no matter the precise verbiage used by the Court, Schneiderman made plain that "when the rights are precious and when they are conferred by solemn adjudication," they "should not lightly be revoked." Id. at 125. In such cases, a "preponderance of the evidence which leaves the issue in doubt" would not do. See id.

Two decades after Schneiderman, the Court extended the Schneiderman standard to all deportation proceedings. See Woodby, 385 U.S. at 285-86 & n.16. Confronted with establishing the degree of proof required of the government, the Woodby Court ruled out the reasonable-doubt standard, because "a deportation proceeding is not a criminal prosecution." See id. at 285. Still, the Court found it inappropriate to permit removal from the country based on a mere preponderance of the evidence. See id. Instead, as in the case of a denaturalization, the Court applied the "clear, unequivocal, and convincing" standard of proof that was "no

Case for proposition that government must prove its case by "proof which produces conviction" while also referring to standard as "by proof of a clear and cogent character"); United States v. Am. Bell Tel. Co., 167 U.S. 224, 251, 262 (1897) (affirming that Maxwell Land-Grant Case requires proof that is "clear, unequivocal, and convincing" but later characterizing standard as requiring that fraud must be proven by "clear, convincing, and satisfactory" evidence); United States v. Iron Silver Mining Co., 128 U.S. 673, 676 (1888) (stating that patent for land may only be set aside "by clear and convincing proof" of fraud).

stranger to the civil law."[7]  Id.  "No less a burden of proof is appropriate in deportation proceedings," the Court reasoned, since similar or greater hardships are present in deportation proceedings as in denaturalization proceedings.  Id. at 286. Unlike denaturalization, the Court explained, deportation often results in immediate expulsion and "many resident aliens have lived in this country longer and established stronger family, social, and economic ties here than some who have become naturalized citizens."  Id.

It is true that Woodby and Schneiderman did not directly address whether the phrases "clear and convincing" and "clear, unequivocal, and convincing" are synonymous.  However, seven months prior to Woodby, the Supreme Court had done just that, clarifying the "clear, unequivocal, and convincing" burden by reciting the familiar definition of "clear and convincing"

---

[7] The Court acknowledged that the "clear, unequivocal, and convincing" standard "or an even higher one" was routinely used in civil cases involving issues of fraud, lost wills, and oral contracts to make bequests. Woodby, 385 U.S. at 285 n.18 (citing 9 Wigmore, Evidence § 2498 (3d ed. 1940)).  Yet by the time Woodby was decided, courts also imposed the "clear and convincing" standard of proof -- sans the term "unequivocal" -- in fraud cases, thereby further suggesting that the Woodby Court viewed the standards to be equivalent. See, e.g., Van Weel v. Winston, 115 U.S. 228, 247 (1885) (noting that proof of fraud in making a contract must be "clear and convincing"); Iron Silver Mining Co., 128 U.S. at 676 (holding that government must provide "clear and convincing proof" that patent was obtained fraudulently); see also 9 Wigmore, Evidence § 2498 (Chadbourn rev. 1981) (collecting Sixth and Second Circuit cases requiring "clear and convincing" evidence of fraud).

evidence. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 737 (1966). Interpreting Section 6 of the Norris-LaGuardia Act, 29 U.S.C. § 106, the Court found the statute's "clear proof" burden, while undefined, must "signify a meaning like that commonly accorded such similar phrases such as 'clear, unequivocal, and convincing proof.'" Id. at 735, 737. "Under this standard," the Court elaborated, the burdened party "is not required to satisfy the criminal standard of reasonable doubt" but must "persuade by a substantial margin, to come forward with 'more than a bare preponderance of the evidence to prevail.'" Id. at 737 (quoting Schneiderman, 320 U.S. at 125). Against the backdrop of Schneiderman's variable parlance, this contemporaneous definition, along with Woodby's comparison of this standard to other civil actions' intermediate standards of proof shortly thereafter, suggests that the Court employed these two articulations of the intermediate standard of proof interchangeably. Indeed, the Court had before and continued to freely reword the standard from case to case throughout the twentieth century. Compare Baumgartner v. United States, 322 U.S. 665, 670-71 (1944) (addressing whether the government had presented "clear, unequivocal, and convincing" evidence that petitioner fraudulently procured certificate of citizenship), with Pullman-Standard v. Swint, 456 U.S. 273, 286 n.16 (1982) (describing Baumgartner as involving question of "whether or not the findings of the two lower courts satisfied the

- 18 -

clear and convincing standard of proof necessary to sustain a denaturalization decree" (emphasis added)).

In Rosa, we concluded that Addington v. Texas, 441 U.S. 418 (1979), mandates the opposite conclusion. Rosa, ___ F.4th ___, 2025 WL 1912130, at *3-4. The question presented in Addington was what degree of proof the Fourteenth Amendment requires to involuntarily commit an individual to a state mental hospital. 441 U.S. at 419-20. In summarizing the "three standards or levels of proof," the Court recognized that the "intermediate standard, which employs some combination of the words 'clear,' 'cogent,' 'unequivocal,' and 'convincing,'" is appropriate in cases where the interests at stake "are deemed to be more substantial than mere loss of money." Id. at 424. The Court specified that, in particular, the "clear, unequivocal, and convincing" standard has been used to "protect particularly important individual interests," such as those implicated in deportation and denaturalization proceedings. Id. (collecting cases). It also noted that "[t]he term 'unequivocal,' taken by itself, means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." Id. at 432 (footnote omitted). On that basis, the Court concluded that state courts are free but not required to use the "unequivocal" standard of proof in civil commitment cases, as "clear and convincing" proof is sufficient to satisfy due process -- implicitly distinguishing the two. See id.

If Addington were the final word on this issue, I might well agree that it suggests a departure by the Supreme Court from the cases that view the two formulations at issue here as synonymous. But three years after Addington, the Supreme Court made clear in Santosky v. Kramer, 455 U.S. 745 (1982), that it still viewed the two formulations as substantively equivalent. Once again, the Court sought to determine the appropriate burden of proof on the government -- this time for purposes of terminating parental rights. Santosky, 455 U.S. at 747-48. In surveying how states had answered this question, the Court found that many state courts had imposed standards employing varying expressions, including "clear and convincing proof," "clear, cogent, and convincing evidence," and, significantly, even "clear and unequivocal" proof. Id. at 749 & n.3 (first quoting Ramsey Cnty. Welfare Dep't v. Young (In re Rosenbloom), 266 N.W.2d 888, 889 (Minn. 1978); then quoting In re Sego, 82 Wash.2d 736, 739 (1973) (en banc); and then quoting DS v. Dep't of Pub. Assistance & Soc. Servs. (In re X), 607 P.2d 911, 919 (Wyo. 1980)). But despite the difference in phrasing used by each state, the Court cited all these cases as examples of where states had "required proof by 'clear and unequivocal' evidence or its equivalent." Id. (emphasis added).

That the Supreme Court viewed these formulations of the intermediate standard of proof as equivalent is also evident from

its equating of their purposes. As acknowledged above, it is not unfair to conclude that Addington distinguished the "clear, unequivocal, and convincing" burden from other variants of the intermediate standard on the basis that it is necessary to protect "particularly important" interests. See 441 U.S. at 424. But Santosky did not attempt to draw such a line, instead stating that the "clear and convincing" burden protected the same interests. 455 U.S. at 756. The Court explained that:

> This Court has mandated an intermediate standard of proof -- "clear and convincing evidence" -- when the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere loss of money." . . . [T]he Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma."

Id. (emphasis added) (quoting Addington, 441 U.S. at 424-25, 426). As examples of such "government-initiated proceedings" where the clear and convincing standard is used, the Court pointed to the civil commitment, deportation, and denaturalization proceedings at issue in Addington, Woodby, and Schneiderman, respectively. See id. at 756-57; see also Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261, 282-83 (1990) (reiterating Santosky's description of the "clear and convincing evidence" burden of proof and explaining that the standard had been required in deportation,

- 21 -

denaturalization, civil commitment, and termination of parental rights proceedings). In doing so, the Court plainly acknowledged that the individual interests at stake in Woodby were dutifully protected by the "clear and convincing" standard of proof.

In my view, while Addington may have briefly raised the possibility that the term "unequivocal" possesses some talismanic properties that elevate the government's burden beyond that required by the "clear and convincing" standard, Santosky put any notion of that distinction to rest. It therefore comes as little surprise that the Supreme Court has repeatedly used "clear and convincing" interchangeably with "clear, unequivocal, and convincing" even after Addington. See, e.g., E.M.D. Sales, Inc. v. Carrera, 604 U.S. 45, 51 (2025) (citing Schneiderman for proposition that "the Court has held that the government must satisfy a clear-and-convincing-evidence standard in order to take away a person's citizenship"); Rivera v. Minnich, 483 U.S. 574, 580 (1987) ("[A]s we have said in explanation of the need for clear and convincing evidence in certain proceedings, 'rights once confirmed should not be lightly revoked.'" (quoting Schneiderman, 320 U.S. at 125)); INS v. Stevic, 467 U.S. 407, 424 n.19 (1984) (citing Woodby to note that "[t]he Board [of Immigration Appeals] is, of course, quite familiar with the clear-and-convincing standard, since the Government is held to that standard in deportation proceedings"); Herman & MacLean v. Huddleston, 459

- 22 -

U.S. 375, 389 (1983) (explaining that the Court has "required proof by clear and convincing evidence where particularly important individual interests or rights are at stake" and citing Santosky, Addington, and Woodby as examples); Pullman-Standard, 456 U.S. at 286 n.16 (noting that "clear and convincing" was the "standard of proof necessary to sustain a denaturalization decree").

Semantically, this conclusion makes sense. Addington seemingly distinguished "unequivocal" as "proof that admits of no doubt," 441 U.S. at 432, but I fail to see how this definition meaningfully differs from what we have always understood the term "clear" to mean in the "clear and convincing" burden of proof. For example, we have previously observed that "'[c]lear' has been defined as '[o]bvious beyond reasonable doubt,' and 'clear and convincing proof' has been described as 'proof beyond a reasonable, i.e., a well-founded doubt' or else as 'more than a preponderance but less than is required in a criminal case.'" Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994) (quoting Black's Law Dictionary 227 (5th ed. 1979)); see also Webster's Third International Dictionary 419 (1993) (defining "clear" as "having no doubt, uncertainty, or confusion of mind"); Radio Corp. of Am. v. Radio Eng'g Lab'ys, 293 U.S. 1, 2, 8 (1934) (interpreting various articulations of standard of proof, including "clearest proof -- perhaps beyond reasonable doubt," to mean "clear and cogent evidence" (first quoting Aus. Mach. Co. v. Buckeye Traction Ditcher Co., 13 F.2d 697, 700 (6th

Cir. 1926))). I worry that, in concluding that the term "unequivocal" alone engenders this heightened burden of proof, we have effectively diminished the unadorned, but heretofore high, "clear and convincing" standard to equate it to something closer to the "dubious" preponderance of the evidence burden of proof. Cf. Microsoft v. i4i LP, 564 U.S. 91, 101-02 (2011) (explaining that preponderance of the evidence is too "dubious" a basis to deem a patent invalid and therefore "clear and convincing" is the proper standard); Schneiderman, 320 U.S. at 125 (rejecting use of "bare preponderance of the evidence which leaves the issue in doubt" (emphasis added) (quoting Maxwell Land-Grant Case, 121 U.S. at 381)).

For these reasons, I do not think it was error for the agency to have omitted the word "unequivocal" in its articulation of the governing legal standard, so long as the evidence in the record was sufficient to meet the "clear and convincing" burden of proof.[8]

---

[8] To the extent that the INA is relevant to our understanding of "clear, unequivocal, and convincing evidence," I am not so persuaded that the statute's imposition of "clear, unequivocal, and convincing evidence" in some places and "clear and convincing" in others requires Rosa's holding. See Rosa, ___ F.4th ___, 2025 WL 1912130, at *4 (citing 8 U.S.C. § 1229a(c)(3) and 8 U.S.C. § 1229a(b)(5)(A)). As Rosa acknowledges, "we are ultimately interpreting not the [INA] but, rather, a judicial standard mandated by Woodby." Id. Additionally, given that we must assume Congress was aware of Supreme Court precedent such as Santosky when amending the INA in 1996, see id., we similarly should

- 24 -

Accepting that we as a panel are bound to conclude that "clear and convincing" imposes a lower burden then "clear, unequivocal, and convincing," I add just a few additional observations about the consequences of this holding.

While at times Congress has seen fit to treat inadmissible aliens and deportable aliens differently, this statutory differential treatment is, as it should be, to the advantage of potentially deportable aliens. See Vazquez Romero v. Garland, 999 F.3d 656, 659 (9th Cir. 2021) ("Aliens who have been lawfully admitted to the country generally receive more protection under immigration law than aliens who are seeking admission to the United States."); Barton v. Barr, 590 U.S. 222, 243 (2020) (Sotomayor, J., dissenting) (explaining that "the grounds for inadmissibility are broader than those for deportability" and that the separate categories and procedures used for each categories of noncitizens tend to "treat[] deportable noncitizens more generously than inadmissible noncitizens"). For example, while the government bears the burden of proof in establishing that an admitted alien is deportable by "clear and convincing" evidence, see 8 U.S.C. § 1229a(c)(3)(A), the onus is on the alien charged with inadmissibility to show that he or she "is clearly and beyond

---

conclude that Congress was aware the Court viewed the two variants of the intermediate standard as imposing equivalent burdens.

doubt entitled to be admitted and is not inadmissible," id. § 1229a(c)(2)(A). It is therefore paradoxical to conclude -- whether by our construction or by Congress's conscious choice -- that the government now bears a lower burden in removing a lawfully admitted noncitizen then it does in proving the alienage of an individual who attempts to enter the United States without any hint of authorization to be here beyond his own say-so.[9]

"[I]n any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." Santosky, 455 U.S. at 755. It follows that the more important the individual interest at stake is, the higher the burden of proof is required to deprive a person of that interest. See id. (comparing preponderance of the evidence, which demonstrates "society's 'minimal concern with the outcome'" of the case," with "stringency" of criminal standard

---

[9] In reissuing our opinion in Rosa, we limited our holding to Woodby's application to persons charged with inadmissibility, leaving for another day the question of whether it similarly governed the degree of proof required to establish alienage of a person charged with deportability. See Rosa, ___ F.4th ___, 2025 WL 1912130, at *3. But regardless of how that question is ultimately answered, my concern remains that interpreting "clear and convincing" to impart a lower burden than "clear, unequivocal, and convincing" curtails the protections afforded noncitizens with lawful admission in the name of rendering greater safeguards to those with no demonstrable attachment to the United States.

that "bespeaks the 'weight and gravity' of the private interest affected" (quoting Addington, 441 U.S. at 423, 427)). And so, it is entirely at odds with Woodby's and Schneiderman's original motivation for requiring a heightened standard of proof in immigration proceedings to permit removal of admitted noncitizens under a lower standard of proof. As with naturalized citizens, admitted aliens have been granted several privileges in being present on our soil that, once awarded, "should not lightly be revoked." See Schneiderman at 125. While admission into the United States is of course not identical to the grant of citizenship, Woodby emphasized that the hardship of removal is no less severe given the immediacy of deportation and, more importantly, the close family, political, and social ties that resident noncitizens have made in this country. See 385 U.S. at 286.

This is not to say that the law permits alienage to be established by less than clear and convincing evidence, for with the question of alienage comes the presumption of citizenship that can only be overcome by a heightened level of proof. But it is likewise important that noncitizens already admitted to the United States, and having clearly established ties to this country, be afforded the same protections that Woodby originally provided them.

## III.

In short, we are bound by our precedent, and I therefore join the panel's thoughtful and narrow decision.  I am concerned, however, that the direction in which our cases are trending is misaligned with the interests at stake.  By affording greater protections to persons charged with inadmissibility, we diminish those protections afforded lawfully admitted persons.